FILED
2020 Apr-23 PM 03:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TINA NORTHARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number: |
| v. | ) | |
| | ) | |
| FOOD INGREDIENTS TECHNOLOGY | ) | |
| COMPANY, LLC, | ) | **PLAINTIFF DEMANDS A** |
| | ) | **TRIAL BY STRUCK JURY** |
| Defendant. | ) | |

# COMPLAINT

## JURISDICTION AND VENUE

1. This is a suit brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981, and the Americans with Disabilities Act that alleges that the Defendant's decisions in September 2018 to scrutinize the Plaintiff, suspend the Plaintiff from her employment, and terminate the Plaintiff's employment were retaliatory.

2. Because this case involves claims brought under federal anti-discrimination laws, this Court's jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(4).

3. Venue is proper under 28 U.S.C. §1391, as the Defendant employed Plaintiff in Anniston, Calhoun County, Alabama.

## ADMINISTRATIVE REMEDIES

4. Defendant terminated the Plaintiff on or about September 20, 2018.

5. Plaintiff filed a Charge of Discrimination on February 19, 2019 with the United States Equal Employment Opportunity Commission ("EEOC). A copy is attached as Exhibit A.

6. On or about January 24, 2020, the EEOC issued to Northard a Dismissal and Notice of Rights. A copy is attached as Exhibit B.

7. Northard filed this action within 90 days of January 24, 2020.

8. All conditions precedent to this action have been satisfied.

9. All administrative remedies have been exhausted.

## PARTIES

10. Northard is over the age of nineteen and is a resident of Calhoun County, Alabama.

11. Defendant Food Ingredients Technology Company, LLC ("FITCO") is a domestic limited liability company doing business in Calhoun County.

12. In 1990, American Dehydrated Foods (ADF) formed a joint venture with the IAMS Company called Food Ingredients Technology Company, LLC (FITCO).

13. The FITCO facility in Anniston, Alabama manufactures and distributes of poultry-based ingredients for use by human and pet food manufacturers.

14. Northard was an employee of FITCO in 2018.

15. In 2018, FITCO employed in excess of 100 persons.

16. FITCO was Northard's employer for purposes of Title VII of the Civil Rights Act of 1964, as amended.

17. FITCO was Northard's employer for purposes of 42 U.S.C. §1981.

18. FITCO was Northard's employer for purposes of the Americans with Disabilities Act.

19. To the extent that discovery reveals that an employee of a corporation other than FITCO was responsible for the retaliatory conduct Northard suffered, then the Plaintiff may seek to amend this case to include that company or companies under joint employer or integrated enterprise theories.

## FACTUAL BACKGROUND

20. FITCO hired Northard to work as a receptionist on or about February 11, 2004.

21. Northard worked for FITCO in the capacity of a receptionist until March 2005 when she started training to be a payroll clerk/administrative assistant.

22. FITCO never gave Northard a job description for her payroll clerk/administrative assistant role.

23. Northard worked under the supervision of Safety Manager/Human Resources Manager Debbie Hannah-McMath.

24. Northard' s day-to-day duties included keeping track of associate payroll, personnel information, and personal/vacation time usage. She used Kronos Workforce and Workday Systems software. She edited, entered, and processed all entries for biweekly payments. She maintained all hourly personnel attendance records, training records, and other related records.

25. Northard did not have the ability to make employment decisions, such as hiring, firing, demotion or discipline, for other FITCO employees.

26. Northard was not a manager for FITCO.

27. On or about August 30, 2018, Jamaal Sanford, the Corporate Human Resources manager at International Dehydrated Foods, Iso Nova Technologies, FITCO, and ADF, contacted Northard.

28. Sanford communicated via electronic mail to Northard a request that she call him because he wanted to have a confidential conversation with her.

29. Northard called Sanford on his cell phone around 5:30 pm on the evening of August 30, 2018.

30. Northard and Sanford spoke by phone on the evening of August 30, 2018 for approximately an hour.

31. Initially on the call, Sanford and Northard discussed that an employee, Wesley Eduardo, had been encouraged to write a false statement by Hannah-McMath and Production Manager Thomas "Trey" Cranford about Tavokeyo Carter.

32. Eduardo had told Northard that he had reported to Hannah-McMath and Cranford that he had heard second-hand from another associate that Tavokeyo Carter was at home while still being on the clock.

33. Eduardo told Northard that Cranford and Hannah-McMath asked him to write a statement that he had gone to Carter's home and seen him there.

34. Northard complained to Sanford that Eduardo later showed her a statement given to him to sign which was false, and he had sought her personal advice about what to do.

35. Northard complained to Sanford that the situation with Eduardo being encouraged to write a false statement upset her.

36. Sanford then asked Northard if she was aware FITCO was involved in an EEOC investigation concerning a former employee, Zach Cochran (Caucasian).

37. Northard responded that while she was not aware of the EEOC investigation, she knew something was going on because Cochran had reached out to her husband about testifying for him in a case.

38. Sanford shared the details with Northard surrounding Cochran's discrimination complaint.

39. FITCO terminated Cochran in January 2018.

40. FITCO alleged Cochran had violated its workplace violence policy.

41. FITCO replaced Cochran with an African-American employee.

42. Cochran complained to the EEOC that his treatment constituted race discrimination.

43. Sanford told Northard he needed to talk to her as part of his investigation into the EEOC complaint.

44. Northard discussed with Sanford a situation involving Wesley Eduardo and Tadarius Smith.

45. Smith and Eduardo had been involved in a fight at work which was well-known throughout the plant, and both remained employed with the company.

46. Sanford said to Northard that if the Smith and Eduardo were black, FITCO would "be in some shit."

47. Northard responded that the two men were African American.

48. Sanford replied, "shit, that is not the way Debbie made it seem."

49. Northard shared with Sanford that she had observed Hannah-McMath, who made the decision to terminate Cochran, treat other non-white employees more favorably under similar conditions.

50. Northard told Sanford that two African-American employees, John Ross and Jessie Siders were involved in a workplace fight in which one pulled a box cutter on the other and said he would cut him, but neither was terminated.

51. Northard complained to Sanford she was tired of the discrimination at the plant.

52. Northard then shared with Sanford that she felt that her husband, who had been terminated earlier in the year by FITCO, had violated the Americans with Disabilities Act due to his health condition.

53. Sanford asked Northard to copy the relevant information she felt showed discrimination and forward it to him.

54. Northard emailed Sanford on August 31, 2018 to let him know it would be the following week before she could copy the files; he told her not to worry about trying to get the files.

55. The following week, on or about September 10, 2018, FITCO suspended Northard from her employment.

56. The suspension occurred during a mid-day meeting.

57. Around 11:15 am, plant manager David Booker told Northard that Sanford was at the plant and wanted to talk to her in Booker's office.

58. Northard went to the meeting and was informed by Sanford that Chantel Gebhard was participating in the meeting by phone.

59. Sanford asked Northard to repeat the conversation he had with her on the 30th.

60. She complied.

61. Sanford then asked Northard if she felt anyone else had been done wrong at FITCO as a result of false statements.

62. Northard identified her husband. She shared that in early 2018 her husband, who suffers from sleep apnea and narcolepsy, had been fired for false reasons. A statement was taken from Rico Simms that implied Simms had been at work all night and observed Mr. Northard sleeping on the job. Simms had not been at work all night. Based on false assertions in Simms's statement, Mr. Northard was fired.

63. Ms. Northard complained that she believed her husband's termination violated the Americans with Disabilities Act since his health condition was known to company, and it looked like the company was falsely trying

to make it appear like he had slept through his shift to create a reason to fire him.

64. Sanford then asked Northard if she knew who Cochran was and why he was suing the company.

65. Northard responded she knew who he was and that he had contacted her husband to testify on his behalf, but her husband had declined.

66. Sanford asked Northard her opinion of Cochran's discharge.

67. She responded she thought it was inconsistent based on the way the African-American employees had been treated more favorably that Cochran, who is white, in not receiving terminations.

68. Sanford then said, "ok, at this time, we are going to have to suspend you."

69. Gebhard asked Ms. Northard if she could think of anything she may have told someone that would cause them to suspend her.

70. Northard responded no and asked if Gebhard would tell her what she was referencing.

71. Gebhard did not respond and disconnected the call.

72. After Gebhard hung up, Sanford asked Northard if she knew Cochran's wife.

73. Northard responded she did not know if Cochran had a wife or a girlfriend, but she did not know either.

74. Sanford then told Northard that the company had reason to believe she was going to help Cochran in his race discrimination claims by testifying against the company, per Cochran's wife.

75. Sanford said they had to suspend Northard.

76. Northard emphatically denied doing anything improper.

77. Even though FITCO's policy and/or practice was that suspensions should not exceed 72 hours, Northard remained on suspension until September 20, 2018.

78. On September 20, 2018, Northard was called into a meeting with Sanford, Ginger Huff, David Booker and possibly someone by phone.

79. In the meeting, Northard learned her employment with FITCO had been terminated.

80. Sanford told Northard she knew too much about too many people.

81. Sanford told Northard she was being terminated for a lapse of judgment.

82. Northard pushed for clarification that he was referring to the Cochran EEOC matter.

83. Sanford confirmed Northard was correct.

**COUNT I**
**TITLE VII – RETALIATION**

84. Plaintiff adopts and incorporates by reference the allegations above in support of this count.

85. Northard participated as a witness in the investigation of Cochran's race discrimination complaint filed with the EEOC by providing information to Sanford.

86. Northard participated in activity protected by Title VII.

87. Northard opposed conduct made unlawful by Title VII by opposing disparate treatment of white and black employees accused of similar or the same type of misconduct.

88. Northard believed in good faith that the conduct she was opposing was racially discriminatory.

89. Northard engaged in activity protected by Title VII.

90. Following Northard's protected activity, FITCO subjected her to scrutiny looking for a reason to fire her, suspended her employment, and terminated her employment.

91. But for Northard's protected activity, FITCO would not have subjected her to scrutiny looking for a reason to fire her, suspended her employment, and terminated her employment.

92. FITCO retaliated against Northard to punish her for participating in protected activity and opposing unlawful discrimination as well as to deter her and others from being a witness for Cochran.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff requests entry of judgment against the Defendant under Title VII of the Civil Rights Act of 1964, as amended, for:

a. Backpay
b. Compensatory damages
c. Punitive damages
d. Injunctive relief, including, but not limited to training, expungement of the termination and suspension from Northard's employment record, backpay, reinstatement, and/or reasonable front pay
e. That relief which is fair, just and equitable
f. Pre-judgment and post-judgment interest
g. Costs, including a reasonable attorney's fee

**COUNT II**
**42 U.S.C. §1981– RETALIATION**

93. Plaintiff adopts and incorporates by reference the allegations above in support of this count.

94. Northard complained of racially discriminatory conduct by FITCO when she opposed disparate treatment of white and black employees accused of similar or the same type of misconduct.

95. Northard believed in good faith that the conduct about which she was complaining was racially discriminatory.

96. Northard engaged in activity protected by 42 U.S.C. §1981.

97. Following Northard's protected activity, FITCO subjected her to scrutiny looking for a reason to fire her, suspended her employment, and terminated her employment.

98. But for Northard's protected activity, FITCO would not have subjected her to scrutiny looking for a reason to fire her, suspended her employment, and terminated her employment.

99. FITCO retaliated against Northard to punish her for complaining of unlawful race discrimination and to deter her and others from being a witness for Cochran.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff requests entry of judgment against the Defendant under 42 U.S.C. §1981 for:

   a. Backpay

   b. Compensatory damages

   c. Punitive damages

   d. Injunctive relief, including, but not limited to training, expungement of the termination and suspension from Northard's employment record, backpay, reinstatement, and/or reasonable front pay

   e. That relief which is fair, just and equitable

   f. Pre-judgment and post-judgment interest

g. Costs, including a reasonable attorney's fee

**COUNT III**
**TITLE AMERICANS WITH DISABILITIES ACT – RETALIATION**

100. Plaintiff adopts and incorporates by reference the allegations above in support of this count.

101. Northard complained to FITCO that she felt her husband had been wrongfully terminated due to his health condition.

102. Northard believed in good faith that her husband's termination was unlawful disability discrimination by FITCO.

103. Northard's complaint about her husband's termination was protected by the Americans with Disabilities Act.

104. Northard believed in good faith that the conduct she was opposing was racially discriminatory.

105. Following Northard's protected activity, FITCO subjected her to scrutiny looking for a reason to fire her, suspended her employment, and terminated her employment.

106. But for Northard's protected activity, FITCO would not have subjected her to scrutiny looking for a reason to fire her, suspended her employment, and terminated her employment.

107. FITCO retaliated against Northard to punish her for opposing unlawful disability discrimination.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff requests entry of judgment against the Defendant under the Americans with Disabilities Act, as amended, for:

a. Backpay
b. Compensatory damages
c. Punitive damages
d. Injunctive relief, including, but not limited to training, expungement of the termination and suspension from Northard's employment record, backpay, reinstatement, and/or reasonable front pay
e. That relief which is fair, just and equitable
f. Pre-judgment and post-judgment interest
g. Costs, including a reasonable attorney's fee

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully submitted,

Heather Newsom Leonard
COUNSEL FOR PLAINTIFF

OF COUNSEL:

HEATHER LEONARD, PC
2105 Devereux Circle
Suite 111
Birmingham, AL 35243

(205) 977-5421 – voice
(205) 278-1400 - facsimile
Heather@HeatherLeonardPC.com

PLEASE SERVE THE DEFENDANT VIA CERTIFIED MAIL:

Food Ingredients Technology Company, LLC
c/o C T Corporation System (registered agent)
2 North Jackson Street
Suite 605
Montgomery, AL 36104